JAMES HARDING v. CHICAGO & GRAND TRUNK RAILWAY CO.

*Common carriers—Injury from being carried past station.*

A declaration as for injury to plaintiff in being wrongfully put off the train at a place remote from the railway station, will not support a recovery where the proof shows that the injuries suffered, which were very great, were mainly due to the passenger's being carried by, but finally landed near the station so late that the carriage which had called for him had gone again, the driver supposing that he had not come, and when all places of shelter were closed, and all conveyances gone, it being after midnight, so that he was obliged, while suffering from fever, to walk home three-quarters of a mile in a freezing rain.

Error to Kalamazoo. (Mills, J.) April 16.—May 13.

CASE. Defendant brings error. Reversed.

*Edwards & Stewart* and *E. W. Meddaugh* for appellant. "Proof must follow allegations of pleadings, and the plaintiff can recover only on the grounds stated in his declaration:" Hutchinson on Carriers § 793; *Mayor v. Humphries* 1 C. & P. 251; the impairment of plaintiff's health from spinal meningitis, did not proximately or naturally result from the said acts of negligence imputed to defendant, nor from any of them : Hutchinson on Carriers § 773 ; *Vicksburg & Meridian Railroad v. Ragsdale* 46 Miss. 458; *Griffin v. Colver* 16 N. Y. 489 ; *Masterton v. Mayor of Brooklyn* 7 Hill 61; *Hadley v. Baxendale* 9 Exch. 341 ; *Olmstead v. Burke* 25 Ill. 86 ; 2 Pars. on Con. 458–461; *M. C. R. R. Co. v. Burrows* 33 Mich. 6 ; *Lewis v. F. & P. M. Ry.* 54 Mich. 55.

*Howard & Roos* for appellee, cited *Pennsylvania Co. v. Hoagland* 78 Ind. 203 ; *Brown v. Chicago &c. R. R. Co.* 54 Wis. 342; *Williams v. Vanderbilt* 28 N. Y. 217.

CAMPBELL, J. Plaintiff sued and obtained judgment below for $1500, as damages incurred by reason of exposure and consequent sickness, which he claimed resulted from the wrong of defendants in failing to leave him at the station at Schoolcraft when the train on which he rode passed there,

so that when it returned and backed down to let him off, there was no vehicle to meet him, and he was compelled to walk home in cold and stormy weather, and his health was broken by exposure.

The facts which the jury must have found were in substance that plaintiff, on November 16, 1882, being quite ill with fever, got on defendant's night train going eastward at Chicago, having a proper ticket to Schoolcraft, where the train was due between two and three o'clock in the morning of November 17, 1882. His malady and the remedies given for it dulled his hearing, and when the conductor came for his ticket he so informed the latter, and was promised that he should be informed of his arrival and put off at Schoolcraft. The train passed the station without warning to him, and under the charge the jury must have found without adequate warning to passengers at all. The train conductor and brakeman stated that it stopped long enough for passengers to get off, and fixed the time at about twenty to twenty-five seconds. Plaintiff and other witnesses, including the person who went to the station to meet him, swore it did not stop at all. After going on for a distance, stated by the conductor to be about three-quarters of a mile, the conductor and brakeman entering the car, which had very few passengers in it, noticed him and referred to him as the man who ought to have been left at Schoolcraft. This roused his attention, and he urged very strenuously to be taken back there, as he was sick and anxious to reach home, and offered to pay anything for that purpose. There is a dispute concerning some of the incidents. His statements charge some very annoying conduct, which is denied. He swears the conductor took pay himself from his pocket-book. It is testified on the other side that he offered money, which was refused, and that he put five dollars in the conductor's pocket. There is also a dispute as to whether anything was done towards backing up before this money was so paid or handed over. The train was then backed up to Schoolcraft and plaintiff was put off, as he claims, some distance from the platform; and as the conductor and men testify, in the usual place. The depot was shut and had been

when the train passed, and the carriage sent for him had left after the train had passed on, when it first reached the station. It was originally behind time by reason of a delay further west, but this became of no importance except as bearing on the question of stopping. After getting off, plaintiff, who was feeble and anxious to get help, was unable to find any place of refuge or shelter except the target house, and after knocking there the target-keeper, at his request, went with him a part of the way towards his home, which was in the village, about three-fourths of a mile off. Being recalled by signal to attend to a train he left plaintiff, who by occasional rests was able to get home slowly, and reached his house about 5 o'clock, exhausted. The night was cold and rainy, and the rain froze upon his blanket and clothing. On reaching home, or shortly after, he was attacked by pains and nervous movements, which developed into a severe case of cerebro-spinal meningitis, which the testimony attributed directly to the exposure. The consequences were very serious, and produced lasting mischief. The money taken by or paid to the conductor was sent to plaintiff's house shortly after, but not accepted by his wife, and he was not in a condition to be seen. This money was not made important on the trial, and the damages were asked and given for the serious injury which followed on the exposure.

The case was argued by plaintiff's counsel, but submitted on printed argument for the defense, who brought error. Apart from some minor questions, in which we discover nothing important, the main controversy was made upon the question of damages, the defense claiming the only very serious injury as too remote from the wrongs alleged.

On examining the grounds relied on by the defense, the objection is presented that the case made by the declaration does not indicate the grounds of recovery which were made prominent upon the trial and in the charge. The substantial grievance now relied on, and which led to the verdict, was that, by passing the station when it should have stopped, the departure of the train led the persons who were waiting with plaintiff's carriage to suppose he was not there, or would not

be put off there, so that they left the station, and on his return there was no one to take charge of him ; and, in the absence of any shelter or conveyance, he was compelled to walk home while in no condition to do so, and injured by the exposure and exhaustion which he could not avoid, and which would be a natural, and is claimed to have been a direct, consequence of what was done.

The declaration puts the whole weight of the mischief on other grounds.   Both counts dwell upon an alleged wrongful putting him off the train at a place remote from the depot. The first count charges nothing else as a cause of bodily injury than a tortious putting him off at a place five miles from the station, although it recites the previous grounds of aggravation and misconduct.   The second count recites the facts quite fully, and as the jury must have substantially found them, up to the time of the backing of the train, but concludes this recital by a similar charge of wrongful and forcible expulsion at a remote place, whereby he was bruised and otherwise injured, and sustained consequent mischief.

In both of these counts the physical injury was laid entirely to the forcible and tortious expulsion at a place remote from the right one, and nothing whatever is said about the suffering which was due to the exposure consequent on the absence of means of shelter and conveyance, that was caused by the failure to let him off when the train arrived in the first place. The difference is obvious between the consequences of a tortious expulsion producing bodily harm and those of exposure from an unseasonable detention, and the deprivation of proper facilities for care and shelter, which do not appear in the alleged causes of bodily peril or injury.

The mere distance from the platform, and placing on the wrong side of the track, were not shown in themselves to have led to any immediate mishap.   Neither was there any evidence of physical violence that entered as a serious element into the account in computing damages.   There was no such variance in the facts sworn to as to render any of the testimony concerning the transactions immaterial, but the chief foundation of damages recovered was entirely different

from that charged in very material particulars. Without an amendment, the rule applied was inapplicable, because no appreciable mischief was traced to the place or manner of putting plaintiff from the train, and no averments laid the worst grievance to anything else.

The record, in its present condition, does not present the question of remoteness of damages in such a shape that we can intelligently deal with it, and the judgment must be reversed and a new trial granted, because the principal damages recovered were not directly or remotely connected with the grievance alleged

The other Justices concurred.